IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT L. EMEHISER, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-05-456-C-MHW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| KEVIN KEMPF, Warden ICI-O, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court is Respondent's Motion for Summary Dismissal (Docket No. 15). All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket Nos. 7, 9, & 10). The Court has determined that oral argument is unnecessary. Having considered the parties' arguments, and having reviewed the state court record in this case, the Court enters the following Order.

MEMORANDUM ORDER  1

# I.

## MOTION FOR SUMMARY DISMISSAL

### A.      Background

In 1982, Petitioner was charged with first degree kidnaping, battery, rape, and

infamous crime against nature. *State Court Record*, Exhibit A-1.  Petitioner eventually

pled guilty to and was convicted of rape, and the State dismissed the three other charges.

The judgment and sentence on the rape conviction were entered on May 6, 1982.

Petitioner received an indeterminate life sentence. *State Court Record*, Exhibit A-2.

Petitioner filed a direct appeal.  The Idaho Court of Appeals affirmed Petitioner's

conviction and sentence. *State Court Record*, Exhibit B-3.  Petitioner did not seek review

by the Idaho Supreme Court, and the Idaho Court of Appeals issued its remittitur on

March 22, 1984. *See State Court Record*, Exhibits B-1 through B-4.

On October 25, 2001, Petitioner was denied parole.  At that time, the Commission

of Pardons and Parole ("Commission") advised him that he was being "passed to his full-

term release date," which was life. *State Court Record*, Exhibit C-2, at Exhibit B.

Petitioner filed a state habeas corpus petition with the Kootenai County Magistrate

Court on November 14, 2001 (mailbox rule date).  The court denied the petition on

November 27, 2001, stating that venue was improper and that Petitioner could not file his

petition until he had served at least 30 years. *Petitioner's Response*, Exhibit C (Docket

No. 28-2, at p. 22).

On March 14, 2002, Petitioner submitted a motion for commutation of sentence to the Commission. *See Supplemental State Court Record*, Docket No. 16-2, at p. 9.  On March 18, 2002, he filed a state petition for writ of habeas corpus in the correct county. The state district court denied relief, and the Idaho Court of Appeals affirmed the district court's decision.  Petitioner filed a petition for review before the Idaho Supreme Court, which was denied on February 22, 2005. *See State Court Record*, Exhibits D-1 through D-10.

Petitioner filed his federal Petition on November 4, 2005, raising the following claims: (1) that the trial court intended to impose only a 30-year sentence, and, as a result, he is being held beyond his full-term release date in violation of the Eighth Amendment; (2) his plea was involuntary because it was induced by the promise of a 30-year sentence; (3) he did not have competent counsel and his plea was not knowingly entered because his attorney allegedly advised him that the sentence did not necessarily mean 30 years under the law; (4) the trial court intended that he be released on parole prior to or at the expiration of 30 years, and changing his sentence violates the Eighth and Fourteenth Amendments and the Ex Post Facto Clause; and (5) the alleged destruction of transcripts denies him access to courts.

In Respondent's pending Motion for Summary Dismissal, Respondent argues that all of Petitioner's claims are untimely and that some of the claims are procedurally defaulted.  The Court now addresses Respondent's contentions and Petitioner's responsive arguments.

MEMORANDUM ORDER  3

**B.      Standard of Law Re: Habeas Corpus Statute of Limitations**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."   In such case, the Court construes the facts in a light most favorable to the petitioner.  When a court is considering a motion to dismiss, it may take judicial notice of facts outside the pleadings.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281 (9th Cir. 1986).[1]  A court may look beyond the complaint to matters of public record, and doing so does not convert a motion for summary dismissal into a motion for summary judgment.  *Id.*   Accordingly, the Court shall take judicial notice of those portions of the state court record lodged by the parties.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), enacted April 24, 1996, established a one-year statute of limitations for federal habeas corpus actions.  *See* 28 U.S.C. § 2244(d)(1).  Because Petitioner's federal habeas corpus petition was filed after AEDPA's enactment date, it is subject to the one-year statute of limitations.  The one-year period begins to run from the date of one of four triggering events, as specified in 28 U.S.C. § 2244(d)(1)(A)-(D).

One of the triggering events, depending upon the claim asserted, is the date upon which the judgment became final, either after direct appeal or after the time for seeking

[1]*abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166 (1991).

MEMORANDUM ORDER  4

an appeal expired.  Where a petitioner is challenging his conviction or sentence, and the judgment became final before the effective date of AEDPA, his federal petition must be filed by April 24, 1997, one year from the effective date of AEDPA.  *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001); 28 U.S.C. § 2244(d)(1)(A).

However, if the factual predicate of the claim did not arise until a later date, the petitioner may argue that a later triggering date is applicable instead, under § 2244(d)(1)(D).  The triggering event on a parole claim or a claim based on a newly-discovered factual predicate is "the date on which the factual predicate of the . . . claims presented could have been discovered through the exercise of due diligence" under § 2244(d)(1)(D), rather than from "the date on which the judgment became final" under § 2244(d)(1)(A).  *See Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004) (an administrative decision is not a judgment); *Redd v. McGrath* 343 F.3d 1077, 1081-82 (9th Cir. 2003).[2]

While the Ninth Circuit has not yet determined whether a separate statute of limitations for each claim exists, the United States Supreme Court has suggested that separate dates of accrual are appropriate for claims arising under "§ 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); [and] §

---

[2]  The Ninth Circuit has made it clear that § 2244(d)(1)(D) does not require a petitioner to have understood "the legal significance of those facts," but that the petitioner must have known simply the facts themselves, at which time "the due diligence (and hence the limitations) clock starts ticking."  *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (2001) (relying on *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (Section 2241(d)(1) sets forth an objective standard)); *see also Shannon v. Newland*, 410  F.3d 1083, 1088 (9th Cir. 2005) (new case law does not qualify as a "factual predicate" under § 2241(d)(1)).

MEMORANDUM ORDER  5

2244(d)(1)(D) (new factual predicate)." *Pace v. Diguglielmo*, 544 U.S. 408, 416 n.6 (2005).

The federal habeas statute of limitations provides tolling (stopping) of the one-year period for all of  "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This is called "statutory tolling."

If, after applying statutory tolling, a petitioner's petition is deemed untimely, a federal court can hear the claims only if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id*. at 418. In order to qualify for equitable tolling a circumstance must have caused Petitioner to be unable to file his federal petition in time.

**C.    Discussion of Statute of Limitations for First Claim**

Petitioner's first claim is that he is being held beyond the 30-year sentence allegedly imposed by the trial court in violation of the Eighth Amendment. The Court construes this claim in several ways.

1.    <u>Construed as an Execution of Sentence Claim</u>

For the following reasons, the Court concludes that this claim, construed as an *execution of sentence* claim, has not yet accrued, because Petitioner has served only approximately 25 years.

There is no clear precedent governing this issue in the Ninth Circuit.  This Court agrees with the Second Circuit Court of Appeals that a challenge to the *execution or administration* of a person's sentence rather than a challenge to a person*'s conviction or sentence* – particularly a claim that a person is being held past his full-term release date – cannot be brought before the alleged release date.  *James v. Walsh*, 308 F.3d 162, 168 (2d Cir. 2002) (successive petition context)*; cf. White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004) (adopting the *James* view that § 2254 rather than § 2241 is the proper means for challenging administration of one's sentence rather than the underlying state court judgment); *cf. Mitchell v. Department of Corrections*, 272 F.Supp.2d 464, 477 (D. Pa. 2003) (using the *James* approach in a § 1983 action to calculate the time during which the plaintiff could have filed a habeas corpus action to determine whether *Heck v. Humphrey*, 512 U.S. 477 (1994), should be applied in a situation where the plaintiff had been completed his sentence).  The *James* Court explained: "James could not have argued that he was in custody in violation of laws of the United States before the time when, according to his calculations, he should have been released."  308 F.3d at 168. Accordingly, construed in this manner, Petitioner's first claim is not barred by the statute of limitations, but it is not ripe and is subject to dismissal without prejudice.

MEMORANDUM ORDER  7

2.      "Good Time" Credit Calculation

Petitioner argues that his claim is ripe because his sentence should have been reduced to 20 years because he had a 30-year sentence and was eligible for 10 years' good-time credit.  There is no legal basis for this argument.  Idaho Code § 20-101A provides, in pertinent part:

> Each person convicted of an offense against the state, which was committed prior to July 1, 1986, and confined in a penal or correctional institution *for a definite term other than for life*, whose record of conduct shows that he has faithfully observed all the rules and has not been subject to punishment, is entitled to a deduction from the term of his sentence. . . .

While Petitioner's conviction date fits within the time frame authorized by the statute for good time credit because his conviction occurred in 1982, the type of sentence he received, an indeterminate life sentence (even if it was understood to be *construed* as a 30-year sentence), does not.[3]  Therefore, the Court rejects Petitioner's argument that his execution of sentence claim is ripe as a result of unallocated good time credit.

3.      Construed as a Sentencing Claim

If the Court construes Petitioner's claim as a challenge to his sentence, then the statute of limitations began when Petitioner knew of the factual predicate of this claim. That occurred on October 25, 2001, when he was denied parole and passed to his full-term release date of life. At that point, he would have realized that his sentence was not

---

[3]  Petitioner's citation to *State v. Broadhead*, 814 P.2d 401 (Idaho 1991) does not help his argument.  That case addressed the good time credit statute as being applicable only as to *parole eligibility* when an indeterminate life sentence is at issue.  *See id.* at 410.

MEMORANDUM ORDER  8

30 years.  Petitioner does not assert that there is an administrative appeal process for parole denial or that he attempted to file such an appeal.

Petitioner filed a state habeas corpus petition with the Kootenai County Magistrate Court on November 14, 2001 (mailbox rule date).  The court denied the petition on November 27, 2001, stating that venue was improper and that Petitioner could not file his petition until he had served at least 30 years.  *Petitioner's Response*, Exhibit C (Docket No. 28-2, at p. 22).

Petitioner filed a petition for commutation of sentence on March 14, 2002.  *See State Court Record*, Exhibit C-1, at p. 19.  There is no authority indicating that a petition for commutation of sentence is part of the administrative appeal process or a "state post-conviction or other collateral review" action under § 2244(d)(2) such that it would toll the federal statute of limitations.  In any event, the four days between this filing and the next filing are inconsequential to the result reached on the overall time calculation.

On March 18, 2002, Petitioner filed a state petition for writ of habeas corpus challenging the parole denial.  The state district court denied relief, and the Idaho Court of Appeals affirmed the district court's decision.  Petitioner filed a petition for review before the Idaho Supreme Court, which was denied on February 22, 2005.  Petitioner filed his federal Petition on November 4, 2005, and he asserts that the mailbox rule should be applied to make the filing date October 13, 2005, the date he turned in his federal Petition to prison officials for mailing.

MEMORANDUM ORDER  9

Using October 25, 2001, as the statute's beginning date, the Court finds that the first date the statute was statutorily tolled is November 14, 2001, when he filed his first habeas corpus matter that was dismissed for improper venue "and/or" unripeness. Respondent has not argued that this was not a properly-filed post-conviction petition such that it would not statutorily toll the statute of limitations. *See* 28 U.S.C. § 2244(d)(2). The Court assumes that it was properly-filed because it could have been transferred to a different county, and it was ripe if construed as a sentencing challenge rather than an execution of sentence claim. Therefore, the Court concludes that Petitioner's statute ran from October 25, 2001 through November 14, 2001, a total of 20 days, before it was statutorily tolled. The statute was tolled while the state court action was pending through November 27, 2001.[4] It began to run again the next day, on November 28, 2001, through March 18, 2002, when Petitioner filed the state court petition, a total of 111 days.

Petitioner's statute was then tolled through February 22, 2005, when the Idaho Supreme Court denied his petition for review in the post-conviction case. Between February 23, 2005,[5] and October 13, 2005 (giving Petitioner the benefit of the mailbox rule), a total of 233 days expired. The untolled time periods added together are as

---

[4]   *See Khen v. Warden, High Desert State Prison*, 2006 WL 463151 at *3 (D. Ca. 2006) (tolling the statute through the last date the post-conviction or collateral review case was "pending," which includes the day it was dismissed or denied); *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) ("[t]he limitation period began to run again the day after McClendon was denied state post-conviction relief").

[5]   The year 2005 was not a leap year (2004, 2008, and 2012 are leap years).

MEMORANDUM ORDER  10

follows: 20 + 111 + 233 = 364.  As a result, Petitioner's first claim, construed as a sentencing challenge, was timely.

**D.     Discussion of Statute of Limitations for Second Claim**

Petitioner's second claim is that his guilty plea was involuntary because it was induced by the promise of a 30-year sentence.  As noted above, the Court must distinguish between a challenge to Petitioner's conviction or sentence, and a challenge to the execution of Petitioner's sentence.  Petitioner has presented his second claim as a challenge to the conviction, and, therefore, for statute of limitations purposes, it could have accrued in one of two ways.

First, applying § 2244(d)(1)(A), Petitioner's statute of limitations would have accrued on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   Because Petitioner's conviction and sentence were final prior to the effective date of AEDPA, his claim should have been filed within the one-year grace period, which ended on April 24, 1997.  *See Supplemental State Court Records*, Affidavit of Kevin Burnett, at Exhibit A (State Court Judgment and Sentence).  Clearly, by that calculation, Petitioner's federal Petition was untimely.

However, if the Court uses § 2244(d)(1)(D), Petitioner should have filed his Petition within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  In other

words, the question is when could Petitioner first have discovered that an "indeterminate period not to exceed the remainder of your natural life," did not mean 30 years?

The earliest date that Petitioner appears to have had notice that his sentence was not 30 years was when the Parole Commission notified him that his denial of parole would result in incarceration for the rest of his life.  The Court notes that the 30-year sentence issue was *not* addressed by Petitioner or the Idaho Court of Appeals on direct review, but that the State's response brief in that matter declared: "The present appellant received a comparable sentence, in light of the circumstances that an indeterminate life sentence is considered to be a 30-year sentence."  *State Court Record*, Exhibit B-2, at p. 26.  This statement tends to support Petitioner's theory that he had no reason to question the 30-year interpretation during direct appeal.  Applying §244(1)(D), the Court concludes that the second claim was timely.

**E.     Discussion of Statute of Limitations for Petitioner's Third Claim**

Petitioner's third claim is that his guilty plea was not knowingly made because trial counsel was ineffective in advising him that an indeterminate life sentence was a maximum of 30 years.  This claim can be construed as a challenge to the conviction or sentence that was newly discovered as of October 25, 2001.  Applying the statute of limitation calculation above, Petitioner's third claim is timely.

**F.     Discussion of Statute of Limitations for Petitioner's Fourth Claim**

Petitioner's fourth claim is that the state trial court intended that Petitioner be released on parole in 30 years (20 years' incarceration plus 10 years good time credit),

MEMORANDUM ORDER  12

and that the Commission's failure to release him is the equivalent of the Commission changing his sentence to a fixed, rather than an indeterminate, life sentence, an alleged Ex Post Facto Clause violation, Eighth Amendment violation, and Fourteenth Amendment violation.  This is an execution of sentence claim, and it is not yet ripe, because the Court has rejected his "good time credit" argument above.  This claim is subject to dismissal without prejudice.

## G.      Discussion of Statute of Limitations for Plaintiff's Fifth Claim

Petitioner's fifth claim is that the destruction of the transcripts of his state criminal case denies him access to the courts.  Petitioner most likely knew about this claim shortly after November 30, 2001, when he first sought the state court record from the Kootenai County District Clerk of Court.  *Petitioner's Response,* Affidavit of Petitioner (Docket No. 28-3).

The statute of limitations began to run from November 30, 2001, and was tolled on March 14, 2002, when his second state habeas corpus petition was filed, which is a total of 108 days.  The state action was still pending and resolved on February 22, 2005, and it ran for 232 days thereafter before the federal Petition was filed.  Because only 340 days expired before his federal filing, this claim is timely.

## H.      Standard of Law Governing Exhaustion and Procedural Default

Petitioner's claims must not only be timely, but they must also be properly exhausted in state court in order for this Court to hear the merits of his claims.  *See* 28 U.S.C. § 2254(b).  To exhaust a claim, a habeas petitioner must have fairly presented it to

MEMORANDUM ORDER  13

the highest state court for review in the manner prescribed by state law.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim.  28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available.  *O'Sullivan*, 526 U.S. at 848.  A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground.  *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991).  Under these circumstances, the claim is considered to have been "procedurally defaulted."  *Coleman,* 501 U.S. at 731.

Following the *Coleman* rule in *Martinez v. Klauser,* 266 F.3d 1091, 1093-94 (9th Cir. 2001), the Ninth Circuit further clarified:  "'In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.'"  *Id.* at 1093-94 (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).  Particularly, the *Martinez* court determined that where there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to [state] law," such a state court decision does *not* rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may *not* be applied

MEMORANDUM ORDER  14

to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action. *Id*.

A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard.  *Id.*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."  *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  *Murray v. Carrier*, 477 U.S. at 496.  To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence.  *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  Where the petitioner pled guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more

MEMORANDUM ORDER  15

likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

**I.      Discussion of Procedural Default**

  1.      <u>Second Claim</u>

Petitioner's second claim is that his guilty plea was involuntary because it was induced by the promise of a 30-year sentence. The Idaho Court of Appeals addressed and rejected this claim on appeal. *State Court Record*, Exhibit D-3, at p. 4. Petitioner did not include this in claim in his brief supporting his petition for review before the Idaho Supreme Court. *State Court Record*, Exhibit D-8, at p. 16. As a result, the second claim is procedurally defaulted.

  2.      <u>Third Claim</u>

Petitioner's third claim, that his guilty plea was not knowingly made based upon the incompetent advice of his trial counsel, was merely alluded to in his brief before the Idaho Court of Appeals, without any constitutional citations. *State Court Record*, Exhibit D-2, at p. 9. The issue was addressed by the Idaho Court of Appeals only as an involuntary plea claim, not as an ineffective assistance of counsel claim; neither was it raised in Petitioner's brief supporting his petition for review before the Idaho Supreme

MEMORANDUM ORDER  16

Court.  *State Court Record*, Exhibit D-3 & D-8.  As a result, the third claim is procedurally defaulted.

      3.    <u>Fourth Claim</u>

The Court has determined that Petitioner's fourth claim is not ripe.  Therefore, the Court does not reach the procedural default argument.

      4.    <u>Fifth Claim</u>

Petitioner's fifth claim is that he was denied access to the courts because the transcripts of the plea and sentencing hearings were destroyed, and only edited microfilm copies remain.  Petitioner stated in his appellate brief before the Idaho Court of Appeals that he was denied a fair appeal, and cites to *U.S. v. Wilson*, 16 F.3d 1027 (9th Cir. 1994), for the proposition that the "[f]ailure of court reporter to prepare accurate and reliable transcripts violates defendant[']s due process."  *State Court Record*, Exhibit D-2, at pp. 4-5.  Petitioner again raised the issue based upon due process constitutional grounds (not access to the courts) in his brief in support of his petition for review before the Idaho Supreme Court.  *State Court Record*, Exhibit D-8, at p. 7.

An access to the courts claim can be alleged under the First or Fourteenth Amendments, and, construing it under the Fourteenth Amendment, it is essentially the same claim as due process claim of destruction of court records impeding adequate review.[6]  Given Petitioner's pro se status on appeal, the Court concludes that he has

---

      [6]  In *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995), the court explained:
           [A]ppellant's reliance on the First Amendment as the exclusive source of

MEMORANDUM ORDER  17

exhausted his destruction of records claim as a due process claim.  Petitioner's claim is

not a "naked reference" to due process, given his citation to Ninth Circuit law pinpointing

the type of due process claim he is making.  *Cf. Shumway v. Payne*, 223 F.3d 982, 987

(9th Cir. 2000) (petitioner's brief cited only to three state court cases).  Therefore,

Petitioner's fifth claim shall be construed only as a due process claim.  *See Fields v.*

*Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) (when the federal district court reviews

a habeas corpus petition, a petition from a state prisoner "who is proceeding pro se may

be viewed more leniently for exhaustion purposes than a petition drafted by counsel").

---

the right of access to the courts is itself questionable. As the Supreme Court has
explained, "[t]he right of access to the courts ... is founded in the Due Process
Clause and assures that no person will be denied the opportunity to present to the
judiciary allegations concerning violations of fundamental constitutional rights."
*Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935
(1974); *see also Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72
(1977). Other cases, it is true, have suggested that the right is located in the First
Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198-99,
82 L.Ed.2d 393 (1984); *California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508, 510, 92 S.Ct. 609, 611-12, 30 L.Ed.2d 642 (1972). Some of those
statements were made in cases involving areas of the law far removed from §
1983, *e.g., California Transport*, 404 U.S. at 510, 92 S.Ct. at 611-12 (antitrust
suit under Sherman Act), whereas *Bounds* and *Wolff* dealt directly with § 1983
right of access challenges by prisoners. *See John L. v. Adams*, 969 F.2d 228, 231
(6th Cir. 1992) (canvassing Supreme Court cases and stating that "the Court has
identified the source of the right of access in the prisoner context as the Due
Process Clause") (emphasis added). And indeed, the very point of the right of
access to the courts is that it provides judicial process. Access for access' sake is
an empty concept; it is the accompanying due process of law that lends meaning
to the right. *See Boddie v. Connecticut*, 401 U.S. 371, 374-79, 91 S.Ct. 780,
784-87, 28 L.Ed.2d 113 (1971).

*Id*. at 76.

MEMORANDUM ORDER  18

The Court recognizes that "[t]he loss of the original records and the destruction of the stenographic notes [does] not, per se, infringe [a petitioner's] constitutional rights. *Macomber v. Gladden*, 304 F.2d 487, 490 (9th Cir. 1962). In *Macomber*, a pre-AEDPA case, the petitioner brought a similar issue in a federal habeas corpus petition. That Court noted that the petitioner had made no effort to request that the state courts reconstruct the record, and, therefore, it deemed the claim unexhausted. On that basis, the Court declared:

> The question of whether under the new Act appellant may now obtain an adequate record and an effective hearing on the merits of his contentions has not been presented to the courts of Oregon. This fact alone would ordinarily preclude a federal court from entertaining a petition for habeas corpus.

*Id*. at 491. *See also U.S. ex rel. Cleveland v. Warden, New Jersey State Prison*, 544 F.2d 1200, 1204 (3d Cir. 1976) (In the face of a situation where there was no synopsis of the trial, or any attempt by either party to develop an evidentiary record before the federal court, the court determined that, "[a]s there is an insufficient factual foundation with which to determine whether the grant of habeas corpus relief is justified, at least at this level, we remand to the district court for a hearing at which the State of New Jersey may, for example, reconstruct a record of the trial.").

Here, somewhat differently, it appears that Petitioner has exhausted his claim by bringing it before the state courts, but it is unclear whether he diligently sought to reconstruct the record during the course of the state court proceedings. This Court will treat the question of whether Petitioner sought to reconstruct the state court record in state

MEMORANDUM ORDER  19

court, or whether he may do so here,  as an evidentiary question under 28 U.S.C. §

2254(e)(2), rather than an exhaustion question under § 2254(b)(1).

Title 28 U.S.C. § 2254(e)(2) restricts evidentiary hearings in federal habeas corpus

matters where there has been a failure to develop the factual basis of a claim as a result of

a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's

counsel."  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  When there has been no lack of

diligence to develop the facts in state court, the Court may exercise its discretion to hold

an evidentiary hearing if one appears necessary after a review of the record.  Rule 8,

Rules Governing Section 2254 Cases; *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir.

2000).

**J.      Cause and Prejudice and Miscarriage of Justice Exceptions**

Because Petitioner's second and third claims are procedurally defaulted, Petitioner

cannot proceed on them unless he shows cause and prejudice or a miscarriage of justice,

as explained above.  Petitioner has made no attempt to argue or show that either exception

applies.  Therefore, these claims are subject to dismissal with prejudice.

**K.      Conclusion**

Petitioner's first claim, construed as an execution of sentence claim, is not ripe,

and therefore shall be dismissed without prejudice.  Construed as a sentencing claim, it is

timely, and Petitioner may proceed upon it.  Petitioner's second and third claims are

procedurally defaulted and shall be dismissed with prejudice.   Petitioner's fourth claim is

MEMORANDUM ORDER  20

not ripe and shall be dismissed without prejudice.  Petitioner's fifth claim appears to be timely, and he may proceed on it as a due process claim.

## II.

### PETITIONER'S MOTIONS

Based on the foregoing,  Petitioner's Motion for Release (Docket No. 25) is subject to denial, because there is no basis for relief on the merits of Petitioner's claims at this point.  Petitioner has also filed a Motion for Reconsideration (Docket No. 19), seeking reconsideration of the Court's decision to appoint counsel.  Petitioner has noted that, as a result of his incarceration, he has been unable to obtain statements or information from the judge, prosecutors, and former defense attorneys in his original case.  Good cause appearing, the Court shall appoint CJA Panel Attorney Sheryl Musgrove as counsel for Petitioner.  Counsel for the parties shall consult and determine a schedule for relevant discovery and dispositive motions.  If an evidentiary hearing appears necessary, counsel for Petitioner shall file an appropriate motion.

## III.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion to Dismiss (Docket No. 15) is GRANTED in part and DENIED in part.  Petitioner's first claim, construed as an execution of sentence claim, is not ripe, and therefore shall be dismissed without prejudice.  Construed as a sentencing claim, it is timely, and Petitioner may proceed upon it.  Petitioner's second and third claims are procedurally defaulted and

MEMORANDUM ORDER  21

shall be dismissed with prejudice.   Petitioner's fourth claim is not ripe and shall be dismissed without prejudice.  Petitioner's fifth claim appears to be timely, and he may proceed on it as a due process claim.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Reconsideration (Docket No. 19) is GRANTED.  CJA Panel Attorney Sheryl Musgrove is appointed counsel for Petitioner.  The Clerk of Court shall send a copy of this Order to Attorney Sheryl Musgrove.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Release (Docket No. 25) is DENIED.

IT IS FURTHER HEREBY ORDERED that counsel for the parties shall consult and determine a schedule for relevant discovery and dispositive motions.  If an evidentiary hearing appears necessary, counsel for Petitioner shall file an appropriate motion.

DATED:  March 14, 2007

_____
Honorable Mikel H. Williams
United States Magistrate Judge

MEMORANDUM ORDER  22